RAZZANO WALSH & TORRES, P.C.
JOSHUA D. WALSH
JOSEPH C. RAZZANO
PAN AMERICAN BUILDING, SUITE 100
139 MURRAY BOULEVARD
HAGÅTÑA, GUAM 96910
TELEPHONE NO. (671) 989-3009
FACSIMILE NO. (671) 989-8750
EMAILS: jdwalsh@rwtguam.com
jrazzano@rwtguam.com

THE LAW OFFICE OF BRANDEE J. K. FARIA, LLC
BRANDEE J.K. FARIA (*PRO HAC VICE PENDING*)
1164 BISHOP STREET SUITE 933
HONOLULU, HAWAII 96813
TELEPHONE: (808) 523-2300
EMAIL: brandee@farialawfirm.com

***Attorneys for Plaintiff***
*EUSEBIO B. BONIFACIO, JR,*
*individually and on behalf of all*
*others similarly situated*

**IN THE DISTRICT COURT OF GUAM**

| | |
|---|---|
| EUSEBIO B. BONIFACIO, JR., individually and on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BANK OF GUAM,<br><br>Defendant. | Civil Case No. 22-00008<br><br>**CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL; EXHIBIT "1"** |

**CLASS ACTION COMPLAINT**

Plaintiff EUSEBIO B. BONIFACIO, JR. on behalf of himself and all others similarly situated ("Plaintiff"), brings this class action complaint against Defendant Bank of Guam, alleges as follows, and alleges the following:

## INTRODUCTION

1.      Plaintiff brings this action individually and on behalf of all similarly situated consumers against Defendant Bank of Guam ("Bank of Guam" or "Bank"), arising from its routine practices of assessing more than one insufficient funds fee ("NSF Fee") on the same transaction.

2.      Bank of Guam's customers have been injured by the Bank's improper practices to the tune of millions of dollars bilked from their accounts in violation Bank of Guam's clear contractual commitments.

3.      Plaintiff, on behalf of himself and a class of similarly situated consumers, seeks to end Bank of Guam's abusive and predatory practices and force it to refund all of these improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and seeks damages, restitution, and injunctive relief, as set forth more fully below.

4.      While there is nothing unlawful about assessing NSF Fees on accounts when such fees are assessed in compliance with contractual terms, NSF Fees in general have a crushing impact on persons living paycheck to paycheck.  This is why the financial services industry is increasingly moving away from such fees.

5.      For example, one of the nation's largest consumer banks — Ally Bank — recently stopped assessing overdraft fees altogether.  Diane Morais, Ally Bank's president of consumer and commercial banking, said that one reason is because NSF Fees disproportionately affect people who are living paycheck to paycheck and that NSF Fees disproportionately affect Black and Latino households. *Overdraft Fees Are Getting the*

*Boot at Ally Financial*, The Wall Street Journal (June 2, 2021), https://www.wsj.com/articles/overdraft-fees-are-getting-the-boot-at-ally-financial-11622631600 (last accessed June 4, 2021).

6.      Indeed, Black households and those with low-to-moderate incomes are almost twice as likely to incur NSF Fees as white households or those with higher incomes, according to a report from the Financial Health Network, a research firm partly funded by financial institutions.

## PARTIES

7.      Plaintiff Eusebio B. Bonifacio, Jr. is a citizen and resident of Guam.

8.      Defendant Bank of Guam is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative class. Bank of Guam has $3 billion in assets, is headquartered in Hagatna, Guam, and maintains branch locations across the territory of Guam.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Guam; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Bank of Guam is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims

asserted herein occurred in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. BANK OF GUAM CHARGES MORE THAN ONE FEE ON THE SAME TRANSACTION

11. Bank of Guam's Account Documents allow Bank of Guam to charge a *single* $25 NSF Fee when a transaction is returned for insufficient funds or paid despite insufficient funds.

12. Bank of Guam breaches its Account Documents by charging more than one $25 NSF Fee on the same transaction, since the contract explicitly states — and reasonable consumers understand — that the same transaction can only incur a single NSF Fee.

13. A recent Washington Post article discussed predatory overdraft fees, labeling NSF fees like those Bank of Guam imposes as "indefensible" because "the customer gets hit with multiple charges for the same item." *I bought my kids dinner – and saw firsthand how overdraft fees punish the poor,* The Washington Post (October 1, 2021), https://www.washingtonpost.com/outlook/i-bought-my-kids-dinner--and-saw-firsthand-how-overdraft-fees-punish-the-poor/2021/09/30/32383c40-216e-11ec-b3d6-8cdebe60d3e2_story.html (last accessed October 8, 2021). The banks "are charging a fee for doing literally nothing.... [T]his is like asking a friend if I can borrow $20, only to have him take $10 out of my wallet for turning down my request." *Id.*

14. Bank of Guam's abusive practices are not standard within the financial services industry. Indeed, major banks like Wells Fargo — one of the largest consumer banks in the country — charge one NSF Fee per item, even if that item is resubmitted for

payment multiple times. And while some other banks engage in the same practices as Bank of Guam, their members agree to terms authorizing the fee practice.

15. Bank of Guam's Account Documents do not say that Bank of Guam may repeatedly charge customers multiple fees on a single transaction. To the contrary, the Account Documents indicate Bank of Guam will only charge a single NSF Fee on a transaction.

**A. Plaintiff's Experiences.**

16. In support of his claim, Plaintiff offers examples of fees that should not have been assessed against his checking account. As alleged below, Bank of Guam: (a) reprocessed previously declined transactions; and (b) charged an additional fee upon reprocessing.

17. For example, on July 20, 2021, and July 26, 2021, Plaintiff was charged $25 NSF/OD Fees on transactions which were resubmitted by the merchant for payment without Plaintiff's request to reprocess the transactions.

18. Each merchant request for payment was for a single transaction and, as is laid out in Bank of Guam's Account Documents, should be subject to, at most, a single NSF or OD Fee (if Bank of Guam returned it or paid it).

**B. The Imposition of Multiple Fees on a Single Transaction Violates Bank of Guam's Express Promises and Representations.**

19. Bank of Guam's Account Documents state that the Bank will assess a single fee of $25 for a transaction that is returned due to insufficient funds.

20. According to Bank of Guam's Account Documents: Returned Check / ACH - Insufficient Funds / Uncollected Funds: $25.00 per item returned. **Ex. 1.**

21.     The same check, ACH, or other electronic payment on an account is not a new "item" each time it is rejected for payment then reprocessed, especially when — as here — Plaintiff took no action to resubmit the transaction.

22.     Even if Bank of Guam reprocesses an instruction for payment, it is still the same item. The Bank's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

23.     As alleged herein, Plaintiff took only a single action to make a single payment; he therefore created only one transaction and may be charged only a single fee.

24.     As the disclosures described above show, Plaintiff never agreed that Bank of Guam may assess multiple NSF Fees for a transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

25.     In sum, Bank of Guam promises that one $25 NSF Fee will be assessed per item, and this must mean all iterations of the same instruction for payment. As such, Bank of Guam breached the contract when it charged more than one fee per transaction.

26.     A reasonable consumer would understand that Bank of Guam's Account Documents permit it to assess an NSF Fee only once per "item."

27.     Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which the Bank will either pay (resulting in an overdraft item) or return (resulting in a returned transaction) when it decides there are insufficient funds in the account. Nowhere do Bank of Guam and its customers agree that Bank of Guam will treat

each reprocessing of a check or ACH payment as a separate transaction, subject to additional fees.

28. Customers reasonably understand, based on the language of the Account Documents, that the Bank's attempts to reprocess checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger additional NSF Fees. In other words, it is always the same transaction.

29. Banks like Bank of Guam that employ this abusive multiple fee practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that engage in this abusive practice require their accountholders to expressly authorize it—something Bank of Guam never did.

30. For example, First Hawaiian Bank engages in the same abusive practices as Bank of Guam, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.
>
> *Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021) (emphasis added).

31. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in**

> **this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**
>
> *Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI (emphasis added).

32. Central Pacific Bank, a leading bank in Hawai'i, states in its deposit account under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient funds ("NSF") in your account, may be resubmitted one or more times for payment, and a returned item/transaction fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/non-sufficient funds.
>
> *Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Jan. 4. 2021), https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

33. BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement,* BP Federal Credit Union, ¶ 14(a), https://www.bpfcu.org/images/docs/membership-agreement.pdf (last accessed June 4, 2021).

34. Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A (last accessed June 4, 2021).

35. Andrews Federal Credit Union states:

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb (last accessed June 4, 2021).

36. Consumers Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta (last accessed June 4, 2021).

37. Wright Patt Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed June 4, 2021).

38. Railroad & Industrial Federal Credit Union states:

> Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p. 2, (Aug. 1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

39. Partners 1st Federal Credit Union states:

> Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019), https://bit.ly/39pDZWb (last accessed March 2, 2021).

40. Members First Credit Union states:

> We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment[.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, https://bit.ly/39rRJ2Y (last accessed March 2, 2021).

41. Community Bank, N.A. states:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.
>
> *Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019), https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

42. RBC Bank states:

> We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.
>
> *Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko (last accessed June 4, 2021).

43. Diamond Lakes Credit Union states,

> Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.
>
> *Membership and Account Agreement*, Diamond Lakes Federal Credit Union, https://bit.ly/39o2P94 (last accessed June 4, 2021).

44. Parkside Credit Union states,

> If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.
>
> *Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed March 2, 2021).

45. Bank of Guam provides no such disclosure, and by not doing so, deceives its accountholders.

## C. The Imposition of Multiple Fees on a Single Transaction Breaches Bank of Guam's Duty of Good Faith and Fair Dealing.

46. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are vested with a discretionary power over the other party. Further, as to bank transactions, the Uniform Commercial Code ("UCC") — which has been adopted by all states as well as Guam — mandates good faith and fair dealing. As such, when a party such as Bank of Guam gives itself discretion to act, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that the Bank is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the Bank has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties.

47. Here — in the adhesion agreements Bank of Guam foisted on Plaintiff and its other customers — Bank of Guam has provided itself numerous discretionary powers affecting customers' bank accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, the Bank abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

48.     Bank of Guam exercises its discretion in its own favor — and to the prejudice of Plaintiff and its other customers — when it defines "item" in a way that directly leads to more NSF Fees. Further, Bank of Guam abuses the power it has over customers and their bank accounts and acts contrary to their reasonable expectations under the Account Documents. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

49.     By exercising its discretion in its own favor — and to the prejudice of Plaintiff and other customers — by charging more than one fee on a single transaction, Bank of Guam breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

50.     It was bad faith and totally outside Plaintiff's reasonable expectations for Bank of Guam to use its discretion to assess multiple NSF Fees for a single attempted payment.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action on behalf of himself, and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.  The proposed classes are defined as:

52.     Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated. The Class is defined as:

> All Bank of Guam checking account holders who, during the applicable statute of limitations, were charged multiple fees on the same item (the "Class").

53.     Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

54.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

55.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Bank of Guam has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

      a) Whether Bank of Guam charged multiple fees on a single transaction;

      b) Whether the conduct enumerated above violates the contract;

      c) Whether the conduct enumerated above violates the covenant of good faith and fair dealing; and

      d) The appropriate measure of damages.

56.     The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Bank of Guam's records. Bank of Guam has the administrative capability through its computer systems and other records to identify all members of the

Class, and such specific information is not otherwise available to Plaintiff.

57.     It is impracticable to bring members of the Class's individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

58.     Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Bank of Guam, as described herein.

59.     Plaintiff is a more than adequate representative of the Class in that Plaintiff is a Bank of Guam checking accountholder and has suffered damages as a result of Bank of Guam's contract violations. In addition:

    a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

    b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

    c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

60. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

61. Bank of Guam has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

62. All conditions precedent to bringing this action have been satisfied and/or waived.

**BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING (Individually and on Behalf of the Class)**

63. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

64. Plaintiff, and all members of the proposed Class contracted with Bank of Guam for checking account services, including debit card services.

65. Bank of Guam breached promises made to Plaintiff and all members of the proposed class when as described herein, Bank of Guam charged multiple fees on a single transaction.

66. In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and

abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

67. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

68. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

69. Bank of Guam has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, Bank of Guam should not have used its discretion to charge multiple fees on a single transaction. The Account Documents do not have a contract term permitting multiple NSF Fees on the same transaction, and the documents are otherwise ambiguous as to any right for Bank of Guam to charge multiple fees on the same transaction.

70. Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

71. Plaintiff and all members of the proposed Class have sustained damages as a result of Bank of Guam's breaches of the contract.

//

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 17 of 30

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

a) Certification for this matter to proceed as a class action on behalf of the Class;

b) Declaring Bank of Guam's NSF/OD Fee policies and practices to be in breach of its contract with account holders;

c) Restitution of all NSF/OD Fees improperly paid to Bank of Guam by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

d) Actual damages in an amount according to proof;

e) Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

f) For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

g) Such other relief as this Court deems just and proper.

***Respectfully submitted*** on April 8, 2022.

RAZZANO WALSH & TORRES, P.C.

By: ______________________
**JOSHUA D. WALSH**
**JOSEPH C. RAZZANO**
*Attorneys for Plaintiff,*
*EUSEBIO B. BONIFACIO, JR.,*
*individually and on behalf of himself and all others similarly situated*

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

***Respectfully submitted*** on April 8, 2022.

RAZZANO WALSH & TORRES, P.C.

By: ______________________________
**JOSHUA D. WALSH**
**JOSEPH C. RAZZANO**
*Attorneys for Plaintiff,*
*EUSEBIO B. BONIFACIO, JR.,*
*individually and on behalf of himself and*
*all others similarly situated*

# EXHIBIT 1

# PERSONAL CHECKING ACCOUNTS DISCLOSURE

**Bank of Guam**
**P.O. Box BW**
**Hagatna, GU 96932**
**November 30, 2021**

**Hafa Adai! Welcome to the Bank of Guam. We would like to take this opportunity to thank you for choosing Bank of Guam. We appreciate your business and look forward to assisting you with all your banking needs. We are committed to providing you with the best in customer service and welcome your comments and suggestions. Si Yuus Maase'. The Management and Staff of the Bank of Guam.**

* * * * * * * * * * * * * * * * * * * * * * *

## ☐ PREMIUM CHECKING ACCOUNTS - PERSONAL

**Rate Information:** This Account is an interest bearing account. The interest rate and annual percentage yield will depend upon the daily balance in the account as shown on the Rate Chart. The interest rate and annual percentage yield may change. At our discretion, we may change the interest rate on the account at any time. Interest begins to accrue no later than the business day we receive credit for the deposit of noncash items (for example, checks). Interest will be compounded monthly and will be credited to the account monthly. If the account is closed before interest is credited, you will not receive the accrued interest.

**Balance Information:** We use the daily balance method to calculate the interest on the account. This method applies a daily periodic rate to the principal in the account each day. You must maintain a minimum balance of $500.00 in the account each day to obtain the disclosed annual percentage yield.

**Limitations:** If you close your account within ninety (90) days from the date of opening, you will be subject to an Early Closure Charge.

**Account Fees:** A Minimum Balance Fee will be imposed every month if the daily balance for the month falls below $750.00 any day of the month. For balances from $-0- to $749.99 the Minimum Balance Fee is $10.00. The Minimum Balance Fee will apply whether an account is classified as active or dormant. If the account balance is reduced to zero, the account may be closed for lack of funds. Other fees and charges applicable to your account are set forth on the schedules below.

## ☐ CHECKING ACCOUNTS - PERSONAL

**Limitations:** If you close your account within ninety (90) days from the date of opening, you will be subject to an Early Closure Charge.

**Account Fees:** A Minimum Balance Fee of $6.00 will be imposed every month if the balance in the account falls below $400.00 any day of the month. The Minimum Balance Fee will apply whether an account is classified as active or dormant. If the account balance is reduced to zero, the account may be closed for lack of funds. Other fees and charges applicable to your account are set forth on the schedules below.

## ☐ CHECKING ACCOUNTS - SENIOR

**Limitations:** If you close your account within ninety (90) days from the date of opening, you will be subject to an Early Closure Charge.

**Account Fees:** No minimum balance fee will be imposed for Senior Citizens ages 55 and over. If the account balance is reduced to zero, the account may be closed for lack of funds. Other fees and charges applicable to your account are set forth on the schedule below.

## OTHER ACCOUNT FEES

**The following fees apply to Premium Checking Accounts (PCA) - Personal; Checking Accounts (DDA) - Personal; and Checking Accounts - Senior Accounts:**

| Fee | Charge |
|---|---|
| Returned Item - Insufficient Funds / Uncollected Funds: | $25.00 per item |
| Chargeback - Deposited check returned drawn on other banks: | $15.00 per item |
| Chargeback - Deposited check returned drawn on Bank of Guam : | $10.00 per item |
| Stop Payment Request: | $20.00 per item |
| Early Closure Charge: | $50.00 per account |
| Stop Payment Renewal: | $20.00 per item |
| Photo of Paid Checks: | $2.00 each check |
| Hold Statement Request: | $20.00 per month |
| Imprinting Check Order Fee: | Charges for check printing vary depending on the type selected and the quantity ordered. |
| Dormant/Inactive Accts : | $15.00 per month |
| Returned Check / ACH - Insufficient Funds / Uncollected Funds : | $25.00 per item returned |
| Paper Statement fee : | 3.00 per account |
| Paid Check / ACH - Insufficient Funds / Uncollected Funds: | $25.00 per item paid |

## MISCELLANEOUS FEES AND CHARGES

**Other Services**

Reconcilement on Accts : $25.00 per hour, 1 hr min.
Research on Accounts: $25.00 per hour, 1 hr min.
Statement Request (Copy): $5.00 per statement, plus $2.00 per page
Temporary Checks (personalized): $4.00 per sheet after first 12 personalized checks
Over-the-counter Temporary Check (non-personalized): $1.00 per check
Legal Process: Notice of Levies/Attachments/Garnishments: $100.00 per Notice
Coin wrapping services: $0.20 per roll
Coin wrappers: $0.10 per wrapper
Long Distance rates: $20.00 first 5 minutes plus $4.0( additional minute
Premium/Regular Checking Stop Payment Requests/Renewals: $20.00/per request/renewal
Notary Fee: per local Gov't rate
Sweep Fee: $2.50 per sweep occurence
Overdraft Protection: $2.50 per ODP transfer
Target Balance Fee: $2.50 per transfer
Account Verification/Confirmation Letters: $20.00 pe request
Over-the-Counter Cash Advance Fee: No Charge.
Signature Guarantees : $25.00 per guarantee
Bank confirmations: $20.00 per confirmation
Prepaid Letters of Credit : $50.00 per quarter
Irrevocable Letters of Credit: 1/4 of 1% of the USD amount minimum of $75.00 per quarter
Check Cashing Fee (Non-customer, other banks check): 1% or $20.00, whichever is greater
Business Bank of Guam Online Banking Services (includes online and mobile): $10.00 per account per month. Refer to the Bank of Guam Online and Mobile Banking Terms and Conditions for additional features and associated fees.
Business Bank of Guam Bill Pay (Bank of Guam Online bill payment service): $10.00 per month

**Domestic and Foreign Exchanges**

Cashier's Check: $25.00 per check
Certification Letter: $20.00 each
Currency/Coin Purchase: 1/10 of 1% of the purchase amount, plus cost of armored car service per shipment
Foreign Currency: $5.00 per transaction.

**Merchant Services**

Rental: Electronic Draft Capture (EDC) Terminals: $25.0( minimum to $37.00, a unit per month
Imprinter Fees: $38.00 per unit
Returned Check: $15.00 per item
Research on Account: $25.00 per hour, 1 hr minimum
Special Statement: $10.00 per page
Supplies & Decals: No Charge
Transaction Fee: $0.25 - $0.35 per transaction
Chargeback Fee: $10.00 per item
Vantiv iQ : No Charge

**Night Depository Services**

Lock Large Bag: $50.00 per bag purchase
Lock Medium Bag: $35.00 per bag purchase
Lock Small Bag: $35.00 per bag purchase
Key Deposit: $25.00 per key
Merchant Plastic Disposable Bags 12 x 16 Box of 500 pcs : $225.00 or $0.45 per piece
Merchant Plastic Disposable Bags 14 x 20 Box of 250 pcs $242.50 or $0.97 per piece
Merchant Plastic Disposable Bags 15 x 20 Box of 250 pcs $232.50 or $0.93 per piece

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 21 of 30

**Wire/Cable Transfers**

INCOMING:Customer: $5.00 each
OUTGOING: Customer: Domestic Destination: 1/2 of 1% of Total Wire Transfer Amount or $75.00 minimum - $150.00 maximum
TRACER:Mail Domestic: $5.00 per item plus out-of-pocket expense
TRACER:Mail-Internat'l: $10.00 per item plus out-of-pocket expense
TRACER: Cable-Domestic: $10.00 per item, plus out-of-pocket expense
TRACER:Cable-Internatl: $20.00 per item, plus out-of-pocket expense
OUTGOING - Customer: International Destination: 1/2 of 1% of Total Wire Transfer Amount or $100.00 minimum - $500.00 maximum
Wire Cancellations : $25.00
Returned Wires: $10.00
Amendments : $10.00

**Collections**

INCOMING: Clean: 1% of amount, $12.50 minimum $35.00 maximum plus out-of-pocket expense
INCOMING: Clean - Government Checks: No Charge
INCOMING: Documentary: 1% of bill amount, $50.00 minimum, $100.00 maximum, plus out-of-pocket expense upon receipt of collection item
INCOMING: Documentary : $15.00 every quarter for collections over 90 days
OUTGOING: Clean - Customer: 1% of amount, $12.50 minimum, $35.00 maximum plus out-of-pocket expense
OUTGOING: Clean - Unpaid Item : 1% of amount, $12.50 minimum, $35.00 maximum plus out-of-pocket expense
OUTGOING: Documentary: 1% of bill amount, $50.00 minimum, $100.00 maximum, plus out-of-pocket expense.
OUTGOING: Documentary - Unpaid Item: 1% of bill amount, $50.00 minimum, $100.00 maximum, plus out-of-pocket expense

**Safe Deposit Box**

(5 x 5 x 22) Hagatna Branch : $55.00 per year
(5 x 5 x 22) Garapan Branch : $55.00 per year
(3 x 10 x 22) Hagatna Branch: $65.00 per year
(3 x 10 x 22) Garapan Branch : $65.00 per year
(5 x 10 x 22) Hagatna Branch: $75.00 per year
(5 x 10 x 22) Garapan Branch: $75.00 per year
(10 x 10 x 22) Hagatna Branch : $170.00 per year
(10 x 10 x 22) Garapan Branch : $170.00 per year
Box Key Deposit : $20.00
Drilling Fee: $170.00

**RATE CHART**

| Account Product Name | Interest Rate | Annual Percentage Yield |
|---|---|---|
| **PREMIUM CHECKING ACCOUNTS - PERSONAL** | | |
| Daily Balances of: | | |
| $500.00-2,499.99 | 0.03% | 0.03% |
| $2,500.00 and up | 0.03% | 0.03% |

**Interest Rates and Annual Percentage Yields are current as of 11-30-2021.**
**For current rate information call (671) 472-5300.**

**ELECTRONIC FUNDS TRANSFER AGREEMENT AND DISCLOSURES**

This Agreement and Disclosure is made in compliance with federal law regulating electronic funds transfer (EFT) services. Electronic funds transfers are electronically initiated transfers of money involving an account at the Financial Institution. The following disclosures set forth your and our rights and responsibilities concerning the electronic funds transfers. In this Agreement, the words "you" and "your" mean those who sign as applicants or any authorized user(s). The words "we", "us" and "our" mean the Financial Institution. The abbreviation "PIN" or word "code" means a personal identification number.

**Bank of Guam Online Banking**

ONLINE BANKING SERVICES

**Types of Transactions:** You may access certain account(s) you maintain with us by computer, using your assigned user ID and password, through the online banking service. You may use the online banking service to perform the following functions:

* Transfer funds between eligible accounts.
* Obtain balance information on eligible accounts.
* Review transactions on eligible accounts.
* Make loan payments.
* Online bill payment.
* Obtain copy of statement.
* Order checks.

**Fees and Charges for Online Service:**

* There is no charge for online banking with us.

**AUTOMATED TELLER MACHINE**

PACIFIC EXPRESS VISA DEBIT CARD

**Types of Transfers:** You may use the automated teller machine (ATM) card and personal identification number (PIN) issued to you to initiate transactions at ATMs of ours, ATMs within the networks identified on your card and such other facilities as we may designate from time to time. Unless you specify a different account during Automated Teller Machine (ATM) transactions, your Primary Account will be used for your transactions. Your Primary Account number and information may be obtained from the ATM Request Form. At present you may use your card to (some of these services may not be available at all ATMs):

* Deposit funds to your checking account.
* Withdraw cash from your checking account.
* Deposit funds to your savings account.
* Withdraw cash from your savings account.
* Transfer funds between your checking and savings accounts.
* Obtain balance information on your deposit accounts.

**Limitations on Frequency and Amount:**

* You may withdraw up to a maximum of $1000.00 (i there are sufficient funds in your account) per day.
* For security purposes, there are limits on the frequency and amount of transfers you may make using ATMs.
* There is a $1,000.00 limitation for ATM withdrawals This limitation is subject to the availability of funds in your account, plus any applicable overdraft protection product or service linked to your account. We do no have to allow you to make a withdrawal from you account if you don't have sufficient available funds in the account to cover the full amount of the withdrawal. the Bank pays a withdrawal or other debit transaction that exceeds the balance of funds in your account, you account will be handled in accordance with our Standard Overdraft Policy or in accordance with any other agreement you may have with us (such as an overdraf protection agreement). Even if we chose to pay one o more overdrafts, we are not obligated to cover any future overdrafts.

**Fees and Charges for ATM Transactions:**

* There is no charge for ATM withdrawals at machines owned by us.
* There is no charge for ATM deposits at machines owned by us.
* There is a $2.00 charge for cash withdrawals at a Domestic Network ATM and a $5.00 charge for cash withdrawals at an International Network ATM. Balance inquiries at a Domestic Network are $1.25 and at a International Network are $1.25.
  NOTE: DOMESTIC refers to ATMs located in the United States, it's protectorates and territories, including Guam, and Canada. INTERNATIONAL refers to any ATM situated outside of a domestic location. NETWORK ATM refers to any ATM other than a Bank of Guam PACIFIC EXPRESS ATM that is participating in a network and accepts our Card.
* Replacement PIN Fee of $5.00 for each PIN.
  * Replacement Card Fee of $10.00 for each Card.
  * Reactivation Fee of $30.00 for each Card.

**ATM Fees.** When you use an ATM not owned by us, you may be charged a fee by the ATM operator (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

**PRE-AUTHORIZED TRANSFER**

**Types of Preauthorized Transfers:** You may arrange for us to complete the following preauthorized transfers to your deposit accounts:

* Accept direct deposits from your employer or othe

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 22 of 30

financial institutions to your checking or savings account.

* Accept direct deposits from the U.S. Treasury Department to your checking or savings acccount.

  *Pay certain recurring bills from your checking or savings account.

  *Automated Clearing House (ACH) transfers to your checking, savings, or loan accounts.

  *Automated Clearing House (ACH) transfers from your checking or savings accounts.

  **Limitations:** Credit for direct deposits is provisional until the receiving financial institution obtains the final settlement. If final settlement does not occur, the originator of the transfer is not deemed to have made payment to the beneficiary and the beneficiary's bank is entitled to a refund of the provisional credit. If we give you provisional credit for an ACH transfer, but do not receive final payment, you become obligated to us for the full amount without prior notice or demand.

**Fees and Charges:**

* Returned ACH (insufficient funds) items - $25.00 each.
* We will charge $20.00 for each stop-payment order for preauthorized transfers.

**POINT OF SALE**

PACIFIC EXPRESS VISA DEBIT CARD

**Types of Transactions:** You may use the card and PIN issued you to pay for purchases from merchants who have agreed to accept the card at Point of Sale (POS) terminals within the networks identified on your card and such other terminals as the Bank may designate from time to time. Point of Sale (POS) transactions will be deducted from your Primary Account. Point of Sale (POS) transactions involving a refund will be credited to your Primary Account. Your Primary Account number and information may be obtained from the POS Request Form.

**Limitations on Frequency and Amount:**

* There is a 10 transaction and a $10,000.00 per day limitation for POS transactions. This limitation is subject to the availability of funds in your account, plus any applicable overdraft protection product or service linked to your account.

  *We do not have to allow you to make a purchase from your account if you don't have sufficient available funds in the account to cover the full amount of the POS transaction. If the Bank pays a POS or other debit transaction that exceeds the balance of funds in your account, your account will be handled in accordance with our Standard Overdraft Policy or in accordance with any other agreement you may have with us (such as an overdraft protection agreement). Even if we chose to pay one or more overdrafts, we are not obligated to cover any future overdrafts.

**Fees and Charges:**

* *We do not charge for any POS transaction.
  *Replacement PIN Fee of $5.00 for each PIN.
  *Replacement Card Fee of $10.00 for each Card.
  *Reactivation Fee of $30.00 for each Card.

**Bank of Guam Voice Banking**

TELEPHONE BANKING SERVICES

**Types of Audio Response Services:** You may access your deposit accounts by using a separate personal identification number (PIN) assigned to you and your account number in our audio response system. At the present time you may use the system to:

* Transfer funds between your deposit accounts.
* Give you tax information on interest earned or paid on your accounts.
* Obtain balance information on your deposit accounts.
* Verify the last date and amount of your payroll deposit.
* Determine if a particular check has cleared your account.
* Obtain current Interest Rates for Savings, Time Certificate of Deposits, Real Estate and Consumer Loan, and estimated loan payoff information. Obtain last 10 checks paid, last 10 deposits made and last 10 withdrawals made. Place stop payment orders on checks. Request for statements via facsimile (fax).

**Limitations on Frequency and Amount:**

* There are no limits on the number of inquiries, transfers or withdrawals you may make per day.
* You are limited to the following dollar amount for transfers or withdrawals: If the transfer is made after our Transfer Cut-off time, the transferred funds may not be considered part of the balance for certain purposes, including for purposes of processing certain transactions until the morning of the next calendar day. This means that such funds may not be available for paying or authorizing certain transactions including, without limit, checks in clearings or point of sale or point of purchase authorizations. For our current Transfer Cut-off time, please contact Customer Service Department at (671) 472-5300.

**Fees and Charges for Audio Response Transactions:**

* We do not charge for any Bank of Guam Voice Banking transactions with the exception of requests for statements via facsimile (fax) and long distance charges, if applicable.

**Other EFT Transactions.** You may access certain account(s) you maintain with us by other EFT transaction types as described below.

**Electronic Check Conversion.** You may authorize a merchant or other payee to make a one-time electronic payment from your account using information from your check to pay for purchases or pay bills. Electronic check conversion is a payment process in which a merchant or other payee (afte obtaining your authorization) uses your check to gathe routing, account, and check number information to initiate a one-time EFT. When information from your check is used to make an electronic fund transfer, funds may be withdrawn from your account as soon as the same day you make you payment. This type of EFT transaction involving a consume account is covered by the Electronic Funds Transfer Act anc this disclosure. A description of the transaction will appea on your statement.

**Re-presented Check Transactions and Fees.** You may authorize a merchant to electronically collect a fee associated with the re-presentment of a check that is returned due to insufficient or unavailable funds. The resulting fee transaction if debited as an EFT from a consumer account is covered by the Electronic Funds Transfer Act and this disclosure. When a merchant re-presents a check electronically, that transaction is no covered by the Electronic Funds Transfer Act or this disclosure. A description of the transaction will appear on your statement.

**In addition to the limitations set forth above, the following limitations may be applicable to your consumer accounts:**

**Liability for Unauthorized Transfers.** Tell us AT ONCE if you believe your card, ATM PIN, POS card or PIN, Audio Response PIN, or online and/or mobile banking PIN has been lost or stolen or if you believe that an electronic fund transfe has been made without your permission using information from your check. Telephoning is the best way of keeping you possible losses down. You could lose all the money in you account (plus your maximum overdraft line of credit). If you tel us within two (2) business days after you learn of the loss o theft of your card or code, you can lose no more than $50.00 i someone used your card or code without your permission. I you do NOT tell us within two (2) business days after you learn of the loss or theft of your card or code, and we can prove tha we could have stopped someone from using your card or code without your permission if you had told us, you could lose as much as $500.00. Also, if your statement shows transfers tha you did not make, including those made by card code or othe such means, tell us at once. If you do not tell us within sixty (60) days after the statement was mailed to you, you may no get back any money lost after the sixty (60) days if we car prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we wil extend the time periods. If you believe that your card or code has been lost or stolen or that someone has transferred or may transfer money from your account without your permission, cal (671) 472-5300, or write us at Bank of Guam,P.O. Box BW Hagatna, GU 96932. You should also call the number or write this address if you believe a transfer has been made using the information from your check without your permission.

The above limitations do not apply to business accounts, unless otherwise required by law. You accept responsibility fo implementing commercially reasonable security measures to safeguard your business account card, ATM PIN, or POS carc

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 23 of 30

or PIN, Audio Response PIN, or online and/or mobile banking PIN from unauthorized use. If you authorize employees, agents, or others to use your card or code, you shall be liable for transactions conducted by such additional users. You are responsible for promptly examining your statement each statement period and reporting any unauthorized transaction within a reasonable time, not to exceed Sixty (60) calendar days after the statement is made available. If you believe that your card or code has been lost or stolen or that someone has transferred or may transfer money from your account without your permission, call (671) 472-5300.

**Illegal Transactions.** You may not use your ATM, POS, or Debit Card, or other access device for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Business Days.** For purposes of these electronic funds transfer disclosures, our business days are Monday through Friday. Holidays are not included.

**Documentation.**

**Periodic Statement.** You will get a monthly account statement from us, unless there are no transactions in a particular month. In any case you will get a statement quarterly. You will get a quarterly statement from us on your savings account if this is the only account you maintain and the only possible electronic transfer to or from the account is a preauthorized deposit.

**Terminal Receipt.** You can get a receipt at the time you make a transfer to or from your account using an ATM or a POS terminal. However, receipts for transactions of $15.00 or less may not always be available.

**Direct Deposits.** If you have arranged to have direct deposits made to your account at least once every sixty (60) days from the same person or company, you can call us at (671) 472-5300 to find out whether or not the deposit has been made.

**Our Liability for Failure to Make Transfers.** For consumer accounts, if we do not complete a transfer to or from your account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will **NOT** be liable for instance:

* If, through no fault of ours, you do not have enough money in your account to make the transfer.
* If the money in your account is subject to legal process or other claim restricting such transfer.
* If the transfer would go over the credit limit on your overdraft line.
* If the ATM where you are making the transfer does not have enough cash.
* If the terminal or system was not working properly and you knew about the breakdown when you started the transfer.
* If circumstances beyond our control (such as fire or flood) prevent the transaction, despite reasonable precautions that we have taken.
* There may be other exceptions stated in our agreement with you.

For business accounts, refer to your account agreement(s) with us.

**In Case of Errors or Questions About Your Electronic Transfers.** For consumer accounts, telephone us at **(671) 472-5300,** or write us at **Bank of Guam,P.O. Box BW, Hagatna, GU 96932** as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared.

* Tell us your name and account number (if any).
* Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
* Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will determine whether an error occurred within ten (10) business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty five (45) days to investigate your complaint or question. If we decide to do this, we will credit your account within ten (10) business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) business days, we may not credit your account.

If a notice of error involves an electronic fund transfer that occurred within thirty (30) days after the first deposit to the account was made, the error involves a new account. For errors involving new accounts, point of sale debit card transactions, or foreign-initiated transactions, we may take up to ninety (90) days to investigate your complaint or question. For new accounts, we may take up to twenty (20) business days to credit your account for the amount you think is in error.

We will tell you the results within three (3) business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

For business accounts, we will generally follow the procedures for error resolution described above, but we are not required to process a claim if you do not notify us within Thirty (30) calendar days after the statement is made available, to give provisional credit, or to investigate your claim within the time periods described above.

**Confidentiality.** We will disclose information to third parties about your account or the transfers you make:

* To complete transfers as necessary;
* To verify the existence and condition of your accoun upon the request of a third party, such as a credit bureau or merchant; or
* To comply with government agency or court orders; or
* If you give us your written permission.

**Personal Identification Number (PIN).** The ATM PIN, POS PIN o Audio Response PIN issued to you is for your security purposes The numbers are confidential and should not be disclosed tc third parties or recorded on the card. You are responsible to safekeeping your PIN(s). You agree not to disclose or otherwise make your ATM PIN, POS PIN or Audio Response PIN available to anyone not authorized to sign on your accounts.

**Notices.** All notices from us will be effective when we have mailed them or delivered them to your last known address or our records. Notices from you will be effective when received by us at the telephone number or the address specified in this Agreement. We reserve the right to change the terms and conditions upon which this service is offered. We will mai notice to you at least twenty one (21) days before the effective date of any change, as required by law. Use of this service is subject to existing regulations governing your account and any future changes to those regulations.

**Enforcement.** In the event either party brings a legal action tc enforce this Agreement or collect amounts owing as a result o any Account transaction, the prevailing party shall be entitled tc reasonable attorneys' fees and costs, including fees on any appeal, subject to any limits under applicable law.

**Termination of ATM, POS and Audio Response Services.** You agree that we may terminate this Agreement and your use o the ATM Card, POS or Audio Response services, if:

* You or any authorized user of your ATM PIN, POS card o PIN or Audio Response PIN breach this or any othe agreement with us;
* We have reason to believe that there has been ar unauthorized use of your ATM PIN, POS card or PIN o Audio Response PIN;
* We notify you or any other party to your account that we have cancelled or will cancel this Agreement. You or any other party to your account can terminate this Agreemen by notifying us in writing.

Termination of service will be effective the first business day following receipt of your written notice. Termination of this Agreement will not affect the rights and responsibilities of the parties under this Agreement for transactions initiated before termination.

**Preauthorized Electronic Fund Transfers.**

**Stop Payment Rights.** If you have told us in advance tc make regular electronic fund transfers out of you account(s), you can stop any of these payments. Here's how: Call us or write to us at the telephone number o address set forth above, in time for us to receive you request three (3) business days or more before the paymen

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 24 of 30

is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within fourteen (14) days after you call. We will charge you $ 20.00 for each stop payment order you give.

**Notice of Varying Amounts.** If these regular payments may vary in amount, the person you are going to pay will tell you, ten (10) days before each payment, when it will be made and how much it will be. You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.

**Liability for Failure to Stop Payment of Preauthorized Transfers.** If you order us to stop one of these payments three (3) business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

**Other Provisions.** There may be a delay between the time a deposit is made and when it will be available for withdrawal. You should review our Funds Availability Policy to determine the availability of the funds deposited at ATMs. We reserve the right to refuse any transaction which would draw upon insufficient funds, exceed a credit limit, lower an account below a required balance, or otherwise require us to increase our required reserve on the account.

**Termination of Bank of Guam Online Banking Services.** You agree that we may terminate this Agreement and your use of Bank of Guam Online Banking services if: (1) You or any authorized user of your Bank of Guam Online Banking Login ID or Password breach this or any other agreement with us; (2) We have reason to believe that there has been unauthorized use of your Bank of Guam Online Banking Login ID or Password.

DEPOSIT ACCOUNT AGREEMENT AND DISCLOSURE

**INTRODUCTION.** In this Deposit Account Agreement and Disclosure, each and all of the depositors are referred to as "you" and "your." The Financial Institution is referred to as "we," "our," and "us." This Deposit Account Agreement contains the terms and conditions governing certain of your deposit accounts with us. As used in this document, the term "Agreement" means this document, the signature card, a rate and fee schedule (which may be in the form of a Rate and Fee Schedule, Time Certificate of Deposit, or Confirmation of Time Deposit, hereinafter called the "Schedule"), Truth in Savings disclosures, a Funds Availability Policy Disclosure, and an Electronic Funds Transfer Agreement and Disclosure, if applicable. Each of you signing the signature card for a deposit account acknowledges receipt of this Agreement, and agrees to the terms set forth in the Agreement, as amended from time to time. You agree that we may waive, in our sole discretion, any fee, charge, term, or condition set forth in this Agreement at the time the Account is opened or subsequent thereto, on a one-time basis or for any period or duration, without changing the terms of the Agreement or your obligation to be bound by the Agreement, and we are not obligated to provide similar waivers in the future or waive our rights to enforce the terms of this Agreement.

**DEPOSIT ACCOUNTS.** From time to time, we may offer or you may open a variety of deposit accounts. Each such account (the "Account") is subject to the general terms and conditions and any specific terms and conditions relating to that type of account that may be set forth in this Agreement. If you open multiple Accounts, you may receive Schedule information for each Account, but this Agreement will cover all your Accounts with us. Each of you will be jointly and severally liable to us for debit balances in the Account, including without limitation overdrafts and Account charges, and jointly and severally promise to pay, upon demand, any and all debit balances, all fees and charges, and our reasonable attorneys' fees and costs and expenses of collection, including but not limited to those incurred at trial and on any appeal.

**INTEREST.** If your Account earns interest, the following information applies: **(A) Payment of Interest.** We will pay interest at the annual rate specified on the Schedule, which does not reflect compounding ("Interest Rate"). The Schedule also sets forth the frequency of interest payments, the frequency of any compounding and crediting, the interest accrual basis, the balance on which interest will be paid, and any minimum balance requirements. **(B) Minimum Balance Requirements.** The Schedule may specify a minimum balance that you are required to maintain in your Account. If the minimum balance is not maintained during a specified period, we, at our option, may not pay interest on your Account and/or may charge a fee for that period. You should review any minimum balance requirements on the Schedule. **(C) Initial Interest Rate.** The initial interest rate is the current annual rate of interest that we will pay on the specified balance in your Account. We may pay interest at different rates, depending on the amount deposited and the type of depositor (individual, business, non-profit organization, etc.). **(D) Interest Compounding and Crediting.** The Schedule will indicate the interest compounding and crediting frequency for your Account (if any). Compounding generally means that interest is being accrued on earned interest. Interest may be compounded more frequently than interest is credited to your Account. **(E) Interest Accrual.** We may accrue interest on your Account more frequently than we pay or credit interest. The interest that has been calculated, but not paid to the Account, is called accrued unpaid interest. **(F) Changes.** We have the right to change the rates and fees in accordance with the terms of the Schedule. We also reserve the right to change any other term of this Agreement at our sole discretion.

**FEES AND CHARGES.** Subject to applicable law, you agree to pay us the fees and charges shown in the Schedules as are applicable to your Account or for other services performed by us. You agree the fees and charges may be changed by us from time to time and authorize us to charge your account for their payment whether or not each charge results in an overdraft of your account. Existing and future charges may be based upon the overall costs of providing account services and may or may not be based upon the direct cost or expense associated with providing the particular service involved. The charges may be based on consideration of profit, competitive position, deterrence of misuse of account privileges by customers, and the safety and soundness of the financial institution. We will notify you of the changes, to the extent required by law.

**BALANCE METHODS.** As used in this Agreement, the "average daily balance" method means "the application of a periodic rate to the average daily balance in the account for the period determined by adding the full amount of principal in the account for each day of the period and dividing that figure by the number of days in the period." The "daily balance" method means "the application of a daily periodic rate to the full amount of principal in the account each day."

**DEPOSIT RULES.** The following terms apply to deposits made to your Account: **(A) Endorsements.** You authorize us to accept transfers, checks, and other items for deposit to your Account if they are made payable to, or to the order of, any one or more of you, whether or not they are endorsed by you. You authorize us to supply missing endorsements, and you warrant that all endorsements are genuine. All checks and other items deposited to your Account should be endorsed payable to the order of us for deposit only, followed by your signature and Account number. We may permit you to deposit an electronic image or other electronic information related to a paper check through a service we provide that allows you to use a device such as a mobile phone, to create and send to us such electronic image or information electronically. Before capturing an electronic image or electronic information of a paper check you must endorse the check payable to the order of us "for mobile deposit only", followed by your signature and Account number, or any alternative restrictive endorsement we may allow and communicate to you. All endorsements must appear on the back of the check or other item within the first 1-1/2 inches from the left side of the item when looking at it from the front. Endorsements should be in black ink. While we may accept non-conforming endorsements, you will be responsible for any loss incurred by us due to the delay in processing or returning the item for payment. **(B) Final Payment.** All non-cash items (for example, checks) deposited to your Account are posted subject to our receipt of final payment by the payor bank. Upon receipt of final payment, the item becomes a collected item. If final payment is not received or if any item you have deposited or cashed is charged back to us for any reason, you authorize us to charge any of your Accounts, without prior notice and at any time, for the amount of the returned item, our returned item fee, any interest paid on that item, and any other fee we pay or incur. If an item to be charged back is lost in the process of collection or unavailable for return, we may rely upon a photocopy of the item or upon any other generally accepted notification of return of the item in charging you or any of your Accounts for the amount of the returned item. We reserve the right to refuse any item to deposit into your Account. **(C) Direct Deposits.** If we offer direct deposit services for automatic preauthorized deposits to your Account of Social Security payments or automatic transfers from your other accounts with us, you must notify us at least 30 days prior to the next scheduled direct deposit or preauthorized transfer if you wish to cancel the direct deposit or transfer service. If any amount deposited must be returned to the government for any reason, you authorize us to deduct the amount from your Account as provided in the Final Payment paragraph above. **(D) Crediting of Deposits.** The Funds

Availability Policy Disclosure provided to you reflects our policies relating to the availability of deposited funds. **(E) Substitute Checks and Electronic Files Pertaining to Original Checks.** If you deposit a "substitute check" (as defined in Regulation CC § Section 229.2(aaa)) or a purported substitute check into your Account, you agree to reimburse us for losses, costs and expenses we may pay or incur associated with the item not meeting applicable substitute check standards and/or from duplicate payments associated with the item. If you provide us with an electronic representation of a substitute check for deposit into your account instead of an original check, you agree to reimburse us for losses, costs and expenses we may pay or incur associated with the substitute check resulting from the electronic representation not meeting applicable substitute check standards and/or from duplicate payments associated with the item. If you provide us with an electronic image or electronic information related to a paper check for deposit into your Account, you agree to reimburse us for losses, costs, and expenses we may pay or incur associated with the electronic image or information not meeting applicable standards for such images and/or from duplicate payment associated with the check. **(F) Deposit Discrepancies.** When you make a deposit to your account, we will credit your account for the amount stated on your deposit slip and we may provide you with a deposit receipt. We reserve the right to review the deposit and confirm the amount of funds you deposited but are not required to do so. If after any review we determine that the amount credited to your account is incorrect, we may adjust your account for the amount of the discrepancy but reserve the right not to do so if the discrepancy would not be a disadvantage to you. This may be the case, for example, if the amount credited to your account was more than the amount actually deposited by you. Notwithstanding the foregoing, we are not required to adjust your account unless within one year of the date of your account statement that shows the deposit either you notify us of the discrepancy or we discover it on our own. If you do not notify us of the error or we do not discover it on our own during this notice period, the amount credited to the account will be considered final.

**WITHDRAWAL RULES.** The following terms apply to withdrawals from your Account: **(A) Manner of Withdrawal.** You may make withdrawals from your Account in any manner that is permitted by us for the type of Account that you have opened. Withdrawals by mail will be posted to your Account as of the day the transaction is processed by us. We may refuse to accept any check other than standard checks provided by us, or approved by us in advance. Withdrawals and transfers from your Account may be restricted as provided in the Agreement, or in the Schedule, or by applicable law. **(B) Withdrawal Restrictions and Overdrafts.** We do not have to allow you to make a withdrawal from your Account if you don't have sufficient available funds in the Account to cover the full amount of the withdrawal. **If there are available funds to cover some, but not all, of the withdrawals or other debits to your Account on a single business day, we will post the checks for which there are sufficient available funds in any order we may choose at our sole discretion.** We may pay other withdrawals or debit items (such as charges) prior to paying any checks, and we may post those other withdrawals or debit items in any order we may choose at our sole discretion. If there are insufficient funds available in your Account to cover a withdrawal or debit presented against your Account, this is called an "overdraft". We will handle each overdraft in accordance with our Standard Overdraft Policy (described below) or in accordance with any other agreement you may have with us (such as an overdraft protection agreement). Even if we choose to pay one or more overdrafts, we are not obligated to cover any future overdrafts. When we determine whether payment of an item will create an overdraft, we may determine the balance of your account at any time between the time we receive the item and the deadline for us to take action on the item. We are not required to determine your account balance more than one (1) time during this period. **(C) Standard Overdraft Policy.** Unless we have agreed to a separate overdraft protection agreement with you, the following rules apply. We are not obligated to pay any overdraft. Subject to the special rules discussed below for transactions at an ATM and one-time debit card transactions, we may assess a service charge on any withdrawal created by check, in-person withdrawal, ATM withdrawal, or other electronic means that results in an overdraft, whether we pay the overdraft or not. If we pay the overdraft, you agree, immediately upon notice from us, to deposit funds sufficient to cover the overdraft plus any service charge we impose. For consumer accounts, we may not impose a service charge in connection with an overdraft that results from a transaction at an ATM or a one-time debit card transaction unless you have given us your consent to pay service charges in connection with overdrafts that result from these transactions and we have sent written confirmation of that consent to you. You may revoke that consent at any time. **(D) Notice Requirements.** Federal regulations require us to retain the right to require you to give at least seven (7) days notice in writing prior to any intended withdrawal from a savings, negotiable order of withdrawal ("NOW"), or money market account. Although we usually pay withdrawals or checks without notice on these accounts, doing so does not mean that we give up this right. **(E) Postdated Items.** You agree that when you write a check, you will not date the check in the future. If you do and the check is presented for payment before the date of the check, we may pay it or return it unpaid. You agree that if we pay the check, the check will be posted to your Account on the date we pay the check, even though the posting date is prior to the date of the check. You further agree that we are not responsible for any loss to you in doing so. We will not honor a postdated check if we receive advance notice from you at such a time and in such a manner as to afford us reasonable opportunity to act. The notice must be in writing, and it must specify the date, amount, and number of the check, along with the name of the payee. Notices are effective for the time periods stated under STOP PAYMENT ORDERS. You agree that we may return a postdated check to the presenter. **(F) Power of Attorney.** The person executing a power of attorney will be referred to as the principal and the person acting for the principal as the agent. We may refuse to comply with a power of attorney for reasonable cause, or until we receive an affidavit from the agent stating that the Power of Attorney presented is a true copy and that, to the best of the agent's knowledge, the principal is alive and that the relevant powers of the agent have not been altered or terminated. **(G Signatures.** You recognize that we have adopted automatec collection and payment procedures so that we can process the greatest volume of items at the lowest possible cost to ou customers. In light of this, you agree that we do not fail tc exercise ordinary care in paying an item solely because ou procedures do not provide for the sight examination of items with a face amount below an amount specified by us from time to time. You authorize us to store and use Signature Carc information in any reasonable form we deem necessary including any digitized signature capture process. If you use a facsimile signature or other form of mechanically reproducec signature (such as, but not limited to, desktop publishing digitized, or computer software generated signature), you agree you shall have the sole responsibility for maintaining security o the facsimile or mechanically reproduced signature and the device by which the facsimile or mechanically reproducec signature is affixed and you shall bear the entire risk fo unauthorized use thereof whether or not you are negligent. You agree that no facsimile or mechanically reproduced signature we have been authorized to honor may be considered a forgery o an unauthorized signature, but that such facsimile o mechanically reproduced signature shall be effective as you signature or endorsement whether or not you have beer negligent. You further agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability o exposure (including reasonable attorney's fees) we or you may suffer or incur as a result of the unlawful use, unauthorized use or misuse by any person of any such facsimile or mechanically reproduced signature or the device by which it is affixed. If you use any form of facsimile or mechanically reproduced signature device, you agree to deliver a sample to us if we request it. **(H Preauthorized Drafts.** If we are unable to enforce presentmen and transfer warranties on remotely created checks unde Regulation CC, then if you voluntarily give information abou your Account (such as our routing number and your accoun number) to a party who is seeking to sell you goods or services and you do not physically deliver a check to the party, any debi to your account initiated by the party to whom you gave the information is deemed authorized by you. **(I) Check Legends** We may disregard information on any check or item other thar the signature of the drawer, the identification of the drawee financial institution and payee, the amount, the endorsements and any other information that appears on the MICR line. Ir addition, we are not responsible to take action on, or for failure to notify you of restrictive language placed on checks or othe items, including but not limited to terms such as, "Void after 9( Days," "Paid in Full," "Two Signatures Required," "Void Ove $100" or similar statements. In accordance with reasonable banking standards, most checks and other items are processec through automated processing and, except in limitec circumstances and in our discretion, most items are no individually examined. You agree that we act within reasonable banking standards by processing most checks and other items through automated processing systems. We may agree tc adhere to extraneous legends if you notify us of such legends and we have agreed in writing to honor such legends.

**STALE CHECKS.** We reserve the right to pay or dishonor a check more than six (6) months old without prior notice to you.

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 26 of 30

**CHECKING ACCOUNTS.** If your account is a checking account, the following terms may apply. If we offer NOW accounts, the account must consist solely of funds in which the entire beneficial interest is held by one or more individuals in an individual capacity, a sole proprietor, or a governmental unit, but not professional corporations or business partnerships. A NOW account may also be held by a for profit organization serving in a fiduciary or trustee capacity for an entity that is itself permitted to hold a NOW account. Otherwise, an organization may hold a NOW account only if it is operated primarily for religious, philanthropic, charitable, educational, or other similar purpose.

**SAVINGS ACCOUNTS.** If your account is an interest bearing account and is not a NOW account or time deposit, the following terms may apply. **(A) Transfers and Withdrawals.** If your Account is a savings or money market deposit account, you may make no more than six (6) transfers and/or withdrawals during any one (1) calendar month or statement cycle (the period from one statement to the next) or similar period of at least four weeks, to another of your accounts with us or to a third party by means of a preauthorized or automatic transfer, or telephonic (including data transmission) agreement, order or instruction or by check, draft, debit card, or similar order made by you and payable to third parties. A "preauthorized transfer" includes any arrangement by us to pay a third party from your account upon written or oral instruction (including an order received through an automated clearing house (ACH) or any arrangement by us to pay a third party from your account at a predetermined time or on a fixed schedule.) **(B) Excess Transactions.** If you have more than the allowable preauthorized transfers or preauthorized checks or drafts (for money market accounts) in any one period, your Account may be subject to closure by us and the funds placed in another account that you are eligible to maintain, or we may take away the transfer and draft capabilities of the account. In addition to the above preauthorized transfers, you may make unlimited withdrawals (payments directly to you or transfers of funds from your Account to any of your other deposit accounts or loan accounts with us), either in person at our locations, by mail, messenger, telephone (via check mailed to you), or use of an ATM card (if applicable).

**TIME DEPOSITS.** If your Account is a time deposit, you have agreed to keep the funds on deposit until the maturity of your Account. If your Account has not matured, any withdrawal of all or part of the funds from your Account may result in an early withdrawal penalty. We will consider requests for early withdrawal and, if granted, the penalty provided in the Schedule will apply. **(A) Penalty.** The early withdrawal penalty is calculated as a forfeiture of part of the accrued interest that has or would be earned on the Account. If your Account has not yet earned enough interest so that the penalty can be deducted from earned interest, or if the interest already has been paid, the difference will be deducted from the principal amount of your Account. For fixed rate Accounts, we will use the rate in effect for your deposit. **(B) Exceptions.** We may let you withdraw money from your Account before the maturity date without an early withdrawal penalty: (1) when one or more of you dies or is determined legally incompetent by a court or other administrative body of competent jurisdiction; or (2) when the Account is an Individual Retirement Account (IRA) established in accordance with 26 USC 408 and the money is paid within seven (7) days after the Account is opened; or (3) when the Account is a Keogh Plan (Keogh), if you forfeit at least the interest earned on the withdrawn funds; or (4) if the time deposit is an IRA or Keogh Plan established pursuant to 26 USC 408 or 26 USC 401, when you reach age 59 1/2 or become disabled; or (5) within an applicable grace period (if any).

**STOP PAYMENT ORDERS.** Subject to certain limitations, you may order us to stop payment on any check, automated clearing house/pre-authorized electronic funds transfer ("ACH/EFT"), or other item payable from your Account, whether drawn or authorized by you or any other account holder, as follows:

**Stop Payment Against a Check or Other Item.** A stop payment request against a check or other item payable from your Account will be effective if we receive the order at such time and in such manner as to afford us a reasonable opportunity to act upon the order. A stop payment order against a check or other item payable from your Account is effective for six (6) months, but it lapses after fourteen (14) calendar days if the original order was oral and was not confirmed in writing within that period. A stop payment order against a check or other item payable from your Account may be renewed for additional six (6) month periods if renewed during a period within which the stop payment order is effective.

**Stop Payment Against an ACH/EFT.** A stop payment order against an ACH/EFT may be honored if received at least three (3) banking days before the scheduled date of the transfer. If we honor a stop payment request against an ACH/EFT received on or within three (3) banking days of the scheduled transfer, we do so without any liability or responsibility to any party having any interest in the entry. A stop payment order against an ACH/EFT is effective until the earlier of: (i) you withdraw the stop payment order, or (ii) the debit entry is returned, or, where a stop payment order is applied to more than one debit entry under a specific authorization involving a specific party, all such debit entries are returned. We may require you to provide us written confirmation of a verbal stop order request against an ACH/EFT within fourteen (14) calendar days. Additionally, if you request us to stop all future payments pursuant to a specific ACH/EFT authorization involving a particular party, we may require you to confirm in writing that you have revoked such authorization.

All stop payment order requests will require you to provide the date, the amount, and the number of the item or authorization, together with the name of the payee. If you give us incorrect information, we will not be liable for failing to stop payment on the item or authorization. Our acceptance of a stop payment order will not constitute a representation that the item or authorization has not already been paid or that we have a reasonable opportunity to act upon the order. You may not stop payment on an official, certified, cashier's, or teller's check issued by us, or request us to stop payment if we have otherwise become accountable for the item or authorization. In addition, you may not stop payment on checks governed by a separate agreement, such as a check guaranty agreement. Further you may not stop payment on an item or authorization after acceptance of the same by us.

Based upon the type of account ownership that you have designated, the following terms and conditions apply.

**INDIVIDUAL ACCOUNTS.** An Individual Account is an account in the name of one depositor only. Only that person may write checks against the Account or withdraw money, regardless of who actually owns the funds.

**MULTIPLE-PARTY ACCOUNTS.** This section pertains to multiple party accounts:

**(A) Joint Account Ownership.** An account with two or more Account Holders is a joint account. Unless you designate otherwise on the Signature Card, joint Account Holders will be considered joint tenants with right of survivorship.

**(1) Joint Tenants With Right of Survivorship.** If your Account is a joint account with right of survivorship, upon the death of one of the joint Account Holders, that person's ownership interest in the Account will immediately pass to the other joint Account Holder(s).

**(2) Joint With No Right of Survivorship.** If your Account is a joint account with no right of survivorship (Joint as Tenants in Common), upon the death of one of the Joint Account Holders, that person's proportionate ownership interest will pass to the estate of the deceased Account Holder.

Each joint Account Holder, without the consent of any other Account Holder, may, and hereby is authorized by every other joint Account Holder, to make any transaction permitted under the Agreement, including without limitation: to withdraw all or any part of the account funds; to pledge the account funds as collateral to us for any obligation, whether that of one or more Account Holders or of a third party; to endorse and deposit checks and other items payable to any joint Account Holder; to give stop payment orders on any check or item, whether drawn by that Account Holder or not; to consent to or revoke consent to payment of service charges on overdrafts that result from ATM transactions or one-time debit card transactions under the Standard Overdraft Policy; and, to close the account, with the disbursement of account proceeds as instructed by the joint Account Holder. Each joint Account Holder is authorized to act for the other Account Holder(s) and we may accept orders and instructions regarding the account from any joint Account Holder. If we believe there to be a dispute between joint Account Holders or we receive inconsistent instructions from the Account Holders, we may suspend or close the account, require a court order to act, and/or require that all joint Account Holders agree in writing to any transaction concerning the account.

Your obligations under the Agreement are joint and several. This means that each joint Account Holder is fully and personally obligated under the terms of the Agreement

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 27 of 30

including liability for overdrafts and debit balances as set forth above, irrespective of which joint Account Holder benefited from the withdrawal. If you establish a joint account without the signature of the other joint Account Holder(s), you agree to hold us harmless for our reliance upon your designation of the other joint Account Holder(s) listed on our documents. Further, the Account is subject to the right of setoff as set forth below.

**(B) Totten Trust Account.** A Totten Trust Account is an informal trust account, reflected on our records, but without a written trust agreement, where the Account is owned by the trustee. The beneficiaries have no right to any funds in the Account during the trustee's lifetime. As the owner of the Account, the trustee may withdraw money from the Account and may, by written direction to us, change the beneficiary under the Account. When the trustee dies, the Account is owned by the named beneficiary or beneficiaries. If the Totten Trust Account is held by more than one trustee, the trustees will be subject to the rules pertaining to joint account ownership as set forth above. If there is no surviving beneficiary upon the death of the last trustee, state law will determine ownership of the funds in the Account.

**(C) P.O.D. Account.** A Payable on Death (P.O.D.) Account is an account payable to the Account Holder during his or her lifetime. As the owner of the Account, you may withdraw money from the Account and may, by written direction to us, change the P.O.D. payee(s) under the Account. When the Account Holder dies, the Account is owned by the P.O.D. payee(s). If the P.O.D. Account is held by more than one person, each Account Holder will be subject to the rules pertaining to joint account ownership as set forth above. If there is more than one surviving P.O.D. payee, the respective interest of each shall be deemed to be in equal shares, unless otherwise stated in the Financial Institution's deposit account records and as allowed by applicable state law. If there is no surviving P.O.D. payee upon the death of the last owner, state law will determine ownership of the funds in the Account.

**ADDITIONAL ACCOUNT TYPES.** This section applies to other deposit account types:

**(A) Formal Trust Account.** A Formal Trust Account is an account held by one or more trustees for the benefit of one or more beneficiaries according to a written trust agreement. Upon our request, the trustee(s) will supply to us a copy of any trust agreement covering the account. We act only as custodian of the trust funds and are under no obligation to act as a trustee or to inquire as to the powers or duties of the trustee(s). The trustee(s) and/or any person opening the Account, in their individual capacity and jointly and severally, agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any beneficiary or other trustee with respect to the authority or actions taken by the trustee(s) in handling or dealing with the Account.

**(B) Uniform Transfer to Minors.** If you have established the account as a custodian for a minor beneficiary under our state version of the Uniform Transfers to Minors Act or the Uniform Gifts to Minors Act, your rights and duties are governed by the Act. You will not be allowed to pledge the account as collateral for any loan to you. Deposits in the account will be held by us for the exclusive right and benefit of the minor. The custodian and/or any person opening the Account, in their individual capacity, agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any beneficiary or other custodian with respect to the authority or actions taken by the custodian in handling or dealing with the Account.

**(C) Agency Account.** An Agency Account is an account to which funds may be deposited and withdrawals made by an Agent designated by the owner of the funds. An Agent has full authority with regard to the Account but does not have an ownership interest in the account. An Agency Account is revocable at any time by notifying us in writing. An Agency designation may be combined with one of the other forms of account ownership.

**(D) Business Accounts.** If the Account is not owned by a natural person (for example, it is owned by a corporation, partnership, limited liability company, sole proprietorship, unincorporated association, etc.), then the Account Holder must provide us with evidence to our satisfaction of the authority of the individuals who sign the signature card to act on behalf of the Account Holder. On any transactions involving the Account, we may act on the instructions of the person(s) authorized in the resolutions, banking agreement, or certificate of authority to act on behalf of the Account Holder. You agree to notify us in writing of any changes in the person(s) authorized or the form of ownership. If we receive conflicting instructions or a dispute arises as to authorization with regard to the handling of the Account, you agree we may place a hold on the Account until such conflict or dispute is resolved to our satisfaction and we will not be liable for dishonored items as a result of such hold.

**(E) Fiduciary Accounts.** With respect to all fiduciary accounts, including but not limited to estate accounts, guardianship accounts, representative payee accounts, and conservatorship accounts, and any Formal Trust Account, Uniform Transfers to Minors Act Account, or Agency Account, we reserve the right to require such documents and authorizations as we may deem necessary or appropriate to satisfy that the person(s) requesting or directing the withdrawal of funds held in the Account have the authority to withdraw such funds. This applies at the time of account opening and at all times thereafter.

**(F) Attorney Client Trust** Subject to applicable law, an Attorney Client Trust is an account set up by an attorney or law firm to hold client or third party funds in trust, separate from the attorney's or law firm's funds. Upon our request, the authorized signers for an Attorney Client Trust will provide documentation required by applicable state law and applicable bar association (or similar entity) rules. We act only as custodian of the trust funds and are under no obligation to act as a trustee or to inquire as to the powers or duties of the attorney or law firm as trustee(s). The attorney, law firm, or any authorized individual on the account agrees to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any beneficiary or third party with respect to the authority actions, or inaction taken by the trustee(s) or authorized individuals in handling or dealing with the account. Additional account terms are governed by a separate agreement.

**(G) Real Estate Broker Client Trust Accounts** Subject to applicable law, a real estate broker may open account(s) to hold client or third party funds in trust, separate from the broker's funds. We act only as custodian of the funds. We are under no obligation to act as a trustee or to inquire as to the powers or duties of the broker or other authorized signer(s) as trustee(s). The broker and any authorized individual on the account in their individual capacity and jointly and severally, agree to indemnify and hold us harmless from and against any and all loss, costs, damage, liability, or exposure, including reasonable attorney's fees, we may suffer or incur arising out of any action or claim by any client or third party with respect to the authority, actions or inaction taken by the broker or authorized signer(s) in handling or dealing with the Account. Upon our request, the authorized signer(s) for this type of account will provide to us any documents required by applicable law and /or real estate professional rules.

**(H) Health Savings Account.** A Health Savings Account (HSA) is a tax preferred account that you agree: a) you are eligible to open and maintain, b) to notify us when you are no longer eligible to maintain, c) will be used for contributions, withdrawals, and earnings for qualified medical expenses or as allowed by law, and d) you will execute and comply with the terms and conditions in the Health Savings Account Trust or Custodial Agreement. Consult your tax advisor about the tax treatment of contributions, withdrawals and earnings.

**ASSIGNABILITY.** The account established under this Agreement is not assignable or transferable except with our consent. We must approve any pledge of the Account and any such pledge remains subject to any right we have under the Agreement and applicable state and federal law. If ownership is proposed to be transferred, we may require the Account be closed and a new account opened in the name of the transferee or pledgee.

**FINANCIAL INSTITUTION LIABILITY.** You agree that if we do not properly complete a transaction according to the Agreement, we will not be liable in any event for losses or damages in excess of the amount of the transaction, and we will not be liable if circumstances beyond our control prevent the transaction, or the funds in your Account are or may be subject to legal process or other claim. In no event will we be liable for consequential damages. In receiving items from you for withdrawal or deposit, we act only as your agent. You are responsible for the condition of a check or item when you issue it. If a check or item is returned or payment is delayed as a result of any writing or marking that you or a prior endorser placed on the front or back of the check or item, you will be responsible for any cost and liabilities associated with such return or delay. We reserve the right to refuse any item for deposit or to reverse credit for any deposited items or to charge your Account for items should they become lost in the

Case 1:22-cv-00008 Document 1 Filed 04/08/22 Page 28 of 30

collection process.

**RIGHT OF SETOFF.** Subject to applicable law, we may exercise our right of setoff or security interest against any and all of your Accounts (except IRA, HSA, Keogh plan and Trust Accounts) without notice, for any liability or debt of any of you, whether joint or individual, whether direct or contingent, whether now or hereafter existing, and whether arising from overdrafts, endorsements, guarantees, loans, attachments, garnishments, levies, attorneys' fees, or other obligations. If the Account is a joint or multiple-party account, each joint or multiple-party account holder authorizes us to exercise our right of setoff against any and all Accounts of each Account Holder. We may not exercise our right of setoff or security interest if prohibited by the Military Lending Act.

**DORMANT ACCOUNTS.** If you have not made a withdrawal from, or a deposit to, your Account for an extended period of time and we have been unable to contact you, your Account may be classified by us as dormant. Subject to applicable law, we may charge a dormant account fee on the Account, and the Account will be presumed to be abandoned. In accordance with state law, funds in abandoned accounts will be remitted to the custody of the applicable state agency, and we will have no further liability to you for such funds. We reserve the right not to send statements on accounts we consider dormant, subject to applicable law.

**ACCOUNT STATEMENTS.** You are responsible for promptly examining your statement each statement period and reporting any irregularities to us. Each account statement will be considered to correctly reflect your transactions, such as deposits, withdrawals, credits, refunds, imposition of fees, interest or dividends, and other additions and subtractions to your Account, unless you notify us in writing within certain time limits after the statement that incorrectly reflects your transactions is made available to you. We will not be liable for any check that is altered or any signature that is forged unless you notify us within Thirty (30) calendar days after the statement and the altered or forged item(s) are made available. Also, we will not be liable for any subsequent items paid, in good faith, containing an unauthorized signature or alteration by the same wrongdoer unless you notify us within Ten (10) calendar days after the statement and first altered or forged items were made available. You must report any other Account problem including encoding errors, and errors involving additions or subtractions (debits and credits) not otherwise covered herein, including electronic transactions not covered by the Electronic Fund Transfer Act, within Sixty (60) calendar days. If the suspected account problem involves a substitute check that you receive, you may (under some circumstances) be entitled to make a claim for an expedited refund. Such a claim may be subject to different notification timeframes. See the Substitute Check Policy Disclosure (if applicable) for further information. If you have requested us to hold your Account statements, we have the right to mail your statements if you have not claimed them within Thirty (30) calendar days. If we truncate your checks, you understand that your original checks will not be returned to you with your statement. You agree that our retention of checks does not alter or waive your responsibility to examine your statements or change the time limits for notifying us of any errors.

**WHOLESALE WIRE AND ACH TRANSACTIONS.** With respect to wire transfers or other transfers of funds not governed by the Electronic Funds Transfer Act, you agree to enter into and comply with our wire transfer (if applicable) agreement and to comply with our security procedures and this section. We advise you that any receiving financial institution (including us) is entitled to rely on any account or bank number you have provided even though that account or bank number may identify a party different from the person or entity you have described by name in any transfer order.

**(A) Provisional Payment.** Credit given by us to you with respect to an ACH credit or wholesale (wire) funds transfer entry is provisional until we receive final settlement for such entry through a Federal Reserve Bank. If we do not receive final settlement, you are hereby notified and agree that we are entitled to a refund of the amount credited to your Account in connection with such entry, and the party (the originator of the entry) making payment to you via such entry shall not be deemed to have paid you the amount of such entry.

**(B) Notice of Receipt.** We will notify you of the receipt of payments in the periodic account statements we provide to you. You acknowledge that we will not give next day notice to you of receipt of an ACH or wholesale (wire) funds transfer item.

**UNLAWFUL INTERNET GAMBLING TRANSACTIONS PROHIBITED.** If you are a commercial customer, you certify that you are not now engaged in, and during the life of this Agreement will not engage in, any activity or business that is unlawful under the Unlawful Internet Gambling Enforcement Act of 2006, 31 USC 5361, et seq., (the "UIGEA"). You may not use your Account or any other service we offer to receive any funds, transfer, credit, instrument or proceeds that arise out of a business that is unlawful under the UIGEA. You agree that if anyone asks us to process a transaction that we believe is restricted under the UIGEA, we may block the transaction and take any other action we deem to be reasonable under the UIGEA and this Agreement.

**NOTICES.** The following terms apply to notices relating to your Account. **(A) Notice of Amendments.** You agree that the terms and conditions of the Agreement, including without limitation all rates, fees, and charges, may be amended by us from time to time. We will notify you of amendments as required by applicable law. Your continued use of the Account evidences your agreement to any amendment. Notices will be sent to the most recent address shown on our records for your Account. Only one notice will be given in the case of joint account holders. **(B) Account Changes.** Any account holder or person authorized to sign on an account is required to notify us in writing if any account holder or other person authorized to sign on an account dies or is declared incompetent by a court. It is your responsibility to notify us of any change in your address or name. We are required to honor items drawn only on the listed Account name. Further, we are required to attempt to communicate with you only at the most recent address provided to us.

**ACCOUNT TERMINATION.** You and we agree that either of us may close your Account and terminate this Agreement at any time with or without cause. We will provide written notice to you in advance if we decide to terminate your Account relationship for any reason other than abuse of the account relationship or to prevent a loss. You agree that advance written notice from us will be reasonable if it is mailed to your statement mailing address immediately upon account closure. You agree that in instances of account abuse or to prevent a loss, notice is reasonably given by us if mailed immediately upon account closure. You may close any of your accounts by notifying us in writing. When an interest bearing account is closed, there may be accrued interest that has not been credited to the account. In that case, we will pay you the interest UNLESS we have told you otherwise. Further, for security reasons, we may require you to close your Account and to open a new account if: there is a change in authorized signers; there has been a forgery or fraud reported or committed involving your Account; any Account checks are lost or stolen; you have too many transfers from your Account or, any other provision of our Agreement with you is violated. After the Account is closed, we have no obligation to accept deposits or pay any outstanding checks. You agree to hold us harmless for refusing to honor any check drawn on a closed account. In the event that we close your Account, we may mail you a Cashier's Check for the applicable remaining Account balance. The termination of this Agreement and closing of an account will not release you from any fees or other obligations incurred prior to the date upon which this Agreement is terminated and an account closed, any fees assessed by us in the process of closing an account, or from your responsibility to maintain sufficient funds in an account to cover any outstanding checks or other debit items.

**GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with all applicable federal laws and all applicable substantive laws of the Territory of Guam in which we are located and where you opened your account. In addition, we are subject to certain federal and state regulations and local clearing house rules governing the subject matter of the Agreement. You understand that we must comply with these laws, regulations, and rules. You agree that if there is any inconsistency between the terms of the Agreement and any applicable law, regulation, or rule, the terms of the Agreement will prevail to the extent any such law, regulation, or rule may be modified by agreement.

**SYSTEMS AND SOFTWARE.** We shall not be responsible to you for any loss or damages suffered by you as a result of the failure of systems and software used by you to interface with our systems or systems and software utilized by you to initiate or process banking transactions whether such transactions are initiated or processed directly with our systems or through a third party service provider. You acknowledge that you are solely responsible for the adequacy of systems and software utilized by you to process banking transactions and the ability of such systems and software to do so accurately.

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record

information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**CREDIT VERIFICATION.** You authorize us to request and obtain one or more credit reports about you from one or more credit reporting agencies for the purposes of considering your application for the Account, reviewing or collecting any Account opened for you, or for any other legitimate business purpose. You authorize us to disclose information about your account to a credit reporting agency if your Account was closed because you have abused it.

**MISCELLANEOUS PROVISIONS.** If you or your Account becomes involved in any legal proceedings, your use of the Account may be restricted. You agree not to use the Account in any illegal activity. We shall be entitled to act upon any legal process served upon us which we reasonably believe to be binding, with no liability to you for doing so. You understand that supervisory personnel may randomly monitor customer service telephone conversations to ensure that you receive accurate, courteous, and fair treatment. If you ask us to follow instructions that we believe might expose us to any claim, liability, or damages, we may refuse to follow your instructions or may require a bond or other protection, including your agreement to indemnify us. You agree to be liable to us, to the extent permitted by law, for any loss, costs, or expenses that we may incur as a result of any dispute or legal proceeding involving your Account. You authorize us to deduct any such loss, costs, or expenses from your Account without prior notice to you or to bill you separately. This obligation includes disputes between you and us involving your Account and situations where we become involved in disputes between you and an authorized signer, a joint owner, or a third party claiming an interest in your Account. It also includes situations where any action taken on your Account by you, an authorized signer, a joint owner, or a third party causes us to seek the advice of an attorney, whether or not we actually become involved in a dispute. Any action by us for reimbursement from you for any costs or expenses may also be made against your estate, heirs and legal representatives, who shall be liable for any claims made against and expenses incurred by us. If a court finds any provision of the Agreement to be invalid or unenforceable, such finding shall not make the rest of the Agreement invalid or unenforceable. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of the Agreement in all other respects shall remain valid and enforceable.

**Member**
**FDIC**

DEPOSIT PRO, Ver. 21.3.10.054 Copr. Finastra USA Corporation 1996, 2021. All Rights Reserved. GU - GU - P:\HARLAND\CFI\TIS\TISDISC